**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MARTIN CHAVEZ-ZARATE,<br><br>　　　　Defendant. | Case No.: 1:98-cr-05149 JLT<br><br>ORDER DENYING DEFENDANT'S MOTIONS FOR SENTENCE REDUCTION PURSUANT TO 18 U.S.C. §§ 3582(c)(1)(A) and (c)(2)<br><br>(Docs. 362, 369, 378, 395) |

Martin Chavez-Zarate is a federal prisoner moving for a sentence reduction pursuant to 18 U.S.C. §§ 3582(c)(1)(A) and (c)(2). (Docs. 362, 369, 378, 395.) The government opposes both motions, arguing that Defendant has not demonstrated "extraordinary and compelling" reasons to grant his § 3582(c)(1)(A) motion and that the 18 U.S.C. § 3553 sentencing factors do not support a sentence reduction under either subsection of § 3582. (*See* Docs. 379, 403.) Defendant filed a reply with respect to his § 3582(c)(2) motion only. (Doc. 404.) For the reasons set forth below, the motions are **DENIED**.

**I.　　Background**

In 1999, a jury found Defendant guilty of conspiracy to distribute and to possess with the intent to distribute cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), as well as four counts of money laundering, in violation of 18 U.S.C. § 1956(a). (Docs. 154, 157.) The presentence investigation report summarized the trial evidence as follows:

> During trial, the Government presented evidence that from a period beginning in 1988 until his arrest in August 1998, the defendant was a significant distributor of cocaine, dealing in multiple kilograms with multiple individuals. The defendant closely associated with individuals linked to major drug cartels in both Colombia and Mexico. The defendant played a leadership role in securing over 350 kilograms of cocaine intended for distribution in Chicago, Illinois. When the 350 kilograms of cocaine was seized by agents, the defendant's associates were arrested, including an individual who had in his possession early $198,000. Shortly after the seizure of the cocaine, the defendant fled the United States and was not apprehended until approximately nine months later. According to Government experts, the 350 kilograms of cocaine seized had a "street value" of $43,000,000 and a "wholesale" value of $8,000,000. [¶] During the conspiracy, the defendant also purchased a home in Reedley, California, valued at approximately $200,000 with profits from his lucrative drug trafficking business. This home is the subject of the money laundering counts, and the Government has sought to recover the home in a separate civil action.

(PSR, Sealed Doc. 401, ¶¶ 74-75.)

The Drug Enforcement Administration reported that the arrests and convictions of Defendant and his two codefendants "were the result of an extensive wiretap operation, known as Operation Casablanca, the largest, and most comprehensive drug/money laundering investigation in the history of United States law enforcement. During Operation Casablanca, authorities seized $100,000,000 from 14 banks and arrested numerous individuals for laundering money for the Cali drug cartel in Columbia [sic] and the Juarez cartel in Mexico." (PSR ¶ 4.)

At the time of Defendant's sentencing, 350 kilograms of cocaine resulted in a base offense level of 38 pursuant to U.S.S.G. § 2D1.1(c)(1). (PSR ¶ 33.) The PSR recommended a four-level upward adjustment for Defendant's aggravating supervisory role in the offense, resulting in a total recommended offense level of 42. (PSR ¶¶ 35-41.) Defendant was assigned 1 criminal history point based on a prior conviction and 2 status points under the prior version of U.S.S.G. § 4A1.1(d), for a total criminal history score of 3. (PSR ¶¶ 43-50.) This placed him in criminal history category II, which, combined with his total offense level, resulted in a Guidelines sentencing range of 360 months to life. (PSR ¶¶ 50, 69.) The PSR recommended that "[i]n view of the extraordinary quantity of drugs seized, as well as the defendant's role as a major cocaine distributor in North America (with ties to traffickers in Mexico and South America)," Defendant be sentenced to life imprisonment. (PSR ¶ 76.)

At sentencing, Judge Wanger adopted the factual findings and guideline application in the

PSR. (Doc. 184 at 7.) Defendant was sentenced to a term of 20 years on each of the four money laundering counts, and a term of life on the conspiracy count, all to be served concurrently, for a total term of life in custody. (*Id.* at 2.) The Ninth Circuit affirmed Defendant's conviction and sentence on appeal. *United States v. Chavez-Zarate*, 45 F. App'x 805, 806 (9th Cir. 2002).

In June 2017, Defendant moved for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 782 to the U.S. Sentencing Guidelines, which revised the Drug Quantity Table in § 2D1.1 and reduced by two levels the offense level applicable to Defendant's drug trafficking conviction. (Doc. 320.) The parties did not dispute that under Amendment 782, which applied retroactively, Defendant's base offense level would have been 36, rather than 38, which resulted in a total offense level of 40 after the four-point aggravating role enhancement. (Doc. 326 at 4-5.) With a criminal history category II, this reduced Defendant's Guidelines range to between 324 and 405 months. (*Id.* at 5.)

After reviewing and considering "Defendant's crime, the original PSR, the § 3553(a) factors, public safety considerations, and Defendant's post-sentencing conduct," Judge O'Neill found that a reduction was warranted, albeit not to the extent Defendant sought. (*See* Doc. 326 at 6.) The court explained that "[t]he sentencing judge presided over the trial, heard testimony, and found a sentence at the high end of the range to be appropriate. This Court will not second-guess that judgment. A sentence at the high end of the newly reduced range is likewise appropriate, and the Court accordingly reduces the sentence to 405 months' imprisonment." (*Id.*)

In January 2020, Defendant filed a motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A), based on his medical circumstances and the risks presented by the COVID-19 pandemic. (*See* Docs. 333, 342.) Judge Drozd concluded that although Defendant had demonstrated extraordinary and compelling reasons for a sentence reduction, the § 3553 factors did not support his release. (Doc. 352 at 12-14.) The Ninth Circuit affirmed. (Doc. 356.)

Defendant is currently serving his sentence at the Federal Correctional Institution in Thomson, Illinois, with a projected release date of August 28, 2026. *Find an inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited August 12, 2025).

///

## II. Sentence Reductions under 18 U.S.C. § 3582(c)(1)(A)

### A. Legal Standard

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020). Under the First Step Act of 2018, a defendant, or the Director of the Bureau of Prisons on the defendant's behalf, may move for a sentence reduction in the district court. 18 U.S.C. § 3582(c)(1)(A). Upon such motion,

> district courts may reduce [a defendant's] term of imprisonment if four conditions are met: (1) the defendant exhausted administrative remedies; (2) "extraordinary and compelling reasons" warrant a sentence reduction; (3) a sentence reduction is "consistent with applicable policy statements" issued by the U.S. Sentencing Commission; and (4) the district court considered the factors set forth in 18 U.S.C. § 3553(a).

*United States v. Chen*, 48 F.4th 1092, 1094-95 (9th Cir. 2022). "Although a district court must conclude that a defendant satisfies all three predicates before granting a motion for compassionate release, it may deny compassionate release if a defendant fails to satisfy any of these grounds." *United States v. Wright*, 46 F.4th 938, 945 (9th Cir. 2022) (citing *United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021)). Finally, the defendant bears the burden of "establish[ing] his eligibility for compassionate release." *Wright*, 46 F.4th at 951.

### B. Administrative Exhaustion

Section 3582(c) permits a defendant to apply to a federal district court for a sentence modification only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A).[1] Defendant submitted his administrative request for compassionate release to the

---

[1] If the BOP denies a defendant's request within 30 days of receipt of such a request, to exhaust his

4

warden of his BOP facility on February 20, 2023. (Doc. 369 at 2, 34-36.) Because more than 30 days have passed since service of his request, Defendant asserts he has exhausted his administrative remedies. (*See id.*; *see also* Doc. 369 at 2.) The government concedes that Defendant has satisfied the exhaustion requirement under § 3582(c)(1)(A). (Doc. 379 at 2.)

### C. Extraordinary and Compelling Reasons

The U.S. Sentencing Commission has issued a policy statement outlining the circumstances under which "extraordinary and compelling reasons" exist to reduce a defendant's sentence under § 3582(c)(1)(A), including the defendant's medical circumstances, age and other related factors, family circumstances, victimization, unusually long sentence, or "other reasons." U.S. Sent'g Guidelines Manual (U.S.S.G.) §§ 1B1.13(b)(1)-(6) (U.S. Sent'g Comm'n 2023). A defendant must show, and courts must consider, "extraordinary and compelling reasons" according to the current version of § 1B1.13. *See United States v. Arcila*, 716 F. Supp. 3d 1052, 1055 (D. Or. 2024), *reconsideration denied*, 2024 WL 2048643 (D. Or. May 6, 2024); *see also United States v. Neal*, 2024 WL 1886476, at *2 n.2 (E.D. Cal. Apr. 30, 2024).[2]

Defendant claims that his combined circumstances present extraordinary and compelling reasons to grant his motion for compassionate release.[3] However, because the Court finds that the 18

---

administrative remedies, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the Regional Director denies the defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, the defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[2] Prior to the November 2023 amendments, the Ninth Circuit held that "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). However, the Ninth Circuit recently held that in 2023, "having regained a quorum, the Commission revised § 1B1.13 to govern motions by a defendant." *United States v. Bryant*, --- F.4th ----, 2025 WL 2026172, at *2 (9th Cir. July 21, 2025) (citing Notice, Sentencing Guidelines for United States Courts, 88 Fed. Reg. 28,254, 28,256 (May 3, 2023)). "Now, courts are 'bound by' § 1B1.13 in deciding all compassionate release motions under § 3582(c)(1)(A)." *Id.* (citing *Chen*, 48 F.4th at 1098; *Concepcion v. United States*, 597 U.S. 481, 495 (2022)). The Court clarified that "*Aruda* has therefore been superseded to the extent that it sets out a different rule for motions filed by defendants after the effective date of the 2023 revisions to § 1B1.13." *Bryant*, 2025 WL 2026172, at *2 n.1.

[3] For example, he argues that due to his noncitizen status, he is ineligible for certain benefits under the FSA, such as time credits, participation in the Residential Drug Abuse Program, residential reentry center placement,

U.S.C. § 3553(a) sentencing factors weigh against Defendant's release, as discussed below, the Court need not decide whether he satisfies the "extraordinary and compelling" requirement under 18 U.S.C. § 3582(c)(1)(A)(i). *Wright*, 46 F.4th at 945.[4]

### D.    18 U.S.C. § 3553 Sentencing Factors

The sentencing factors enumerated in 18 U.S.C. § 3553(a) are: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed … to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; [and] to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for … the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; … (5) any pertinent policy statement … issued by the Sentencing Commission; … (6) the need to avoid unwarranted sentence disparities among defendants

---

and home confinement, all of which would lead to earlier release from BOP custody or earlier placement in pre-release custody. (*See* Doc. 369 at 7-12; Doc. 378 at 6-7.) He "invokes Equal Protection constitutional rights, since he may not be treated differently than other individuals similarly situated." (Doc. 369 at 27.) He also argues that his 405-month sentence, despite being reduced from a life sentence to the low-end of the amended Guidelines range in 2018, is "excessive" and "derives from a manifest injustice" considering his age, rehabilitative efforts, amount of time served, and the fact that he now accepts responsibility for his actions. (*Id.* at 3, 5-6.) Finally, Defendant claims that his medical conditions "add weight towards obtaining mercy." (*Id.* at 29.)

[4] The Court observes that in ruling on Defendant's motion for compassionate release in 2020, Judge Drozd concluded that Defendant had demonstrated extraordinary and compelling reasons based on his age under the prior U.S.S.G. § 1B1.13. *Compare* U.S.S.G. § 1B1.13, cmt. n.1(B) (2018), *with* U.S.S.G. § 1B1.13(b)(2) (2023). The parties did not dispute that Defendant was "at least 65 years old" and had "served at least 10 years … of his … term of imprisonment." U.S.S.G. §§ 1B1.13, cmt. n.1(B)(i), (iii) (2018). The court was also persuaded that Defendant had demonstrated the third and final element; that he was "suffering from 'a serious deterioration in physical … health because of the aging process' due to his coronary atherosclerosis, which also places him at greater risk of becoming severely ill if he were to contract the COVID-19 virus." (Doc. 352 at 12-13, quoting § 1B1.13, cmt. n.1(B)(ii).) Judge Drozd noted that "while it may have been a close call as to whether [D]efendant … could demonstrate 'extraordinary and compelling reasons' absent the risks to his health posed by the COVID-19 pandemic, [D]efendant's coronary artery disease when considered along with the risk to him associated with COVID-19, tip the scales in his favor on this point." (*Id.* at 13.) For purposes of this motion, the Court assumes, without deciding, that Defendant's further deterioration in health over the last 5 years, despite the end of the COVID-19 pandemic, likewise amounts to extraordinary and compelling reasons, even if it may be a "close call."

1  with similar records who have been found guilty of similar conduct; and (7) the need to provide
2  restitution to any victims of the offense." Defendant asserts that while there is "[n]o doubt" that the
3  nature and circumstances of his offense are serious, they do not justify a 405-month sentence, and
4  "[n]either do any of the other § 3553 factors." (Doc. 369 at 23.) The Court concludes otherwise.

5  As Judge Drozd explained when denying Defendant's previous motion for compassionate
6  release, "it is not an exaggeration to state that defendant's prosecution in this case was one of the most
7  serious drug trafficking offenses prosecuted in this district at the time. Indeed, defendant Chavez-
8  Zarate's arrest and conviction was recognized as being 'the result of an extensive wiretap operation,
9  known as Operation Casablanca, *the largest and most comprehensive drug/money laundering*
10 *investigation in the history of United States law enforcement*' according to the [DEA]." (Doc. 352 at
11 14, quoting PSR ¶ 4.) Federal law enforcement authorities seized $100 million from 14 financial
12 institutions associated with major drug cartels in Colombia and Mexico because of that Operation.
13 (PSR ¶ 4.)

14 The evidence at trial indicated that Defendant "frequently communicated with an individual
15 who was known to be 'Mexico's number one [drug] trafficker of cocaine.'" (Doc. 352 at 15, citing
16 PSR ¶ 4.) Defendant himself trafficked cocaine in large quantities from at least as early as 1988 until
17 he fled the United States in 1997. (*Id.*, citing PSR ¶ 5.) The Chicago transaction for which he is
18 serving his current term of imprisonment involved over 350 kilograms of cocaine worth approximately
19 $43 million in 1997. (PSR ¶ 74.) The government also presented evidence that Defendant had been
20 involved in the shipment of firearms (pistols) to narcotics traffickers in Mexico, who used them to
21 assassinate rival traffickers. (Doc. 352 at 15, citing Doc. 339 at 3.) At the time of the offense,
22 Defendant was on probation in connection with a prior conviction for aggravated possession of 400
23 pounds of marijuana. (PSR ¶¶ 2, 43-45, 49.) He received a four-level enhancement for his leadership
24 role in the conspiracy. (PSR ¶¶ 35-36.)

25 In imposing the maximum sentence of life, Judge Wanger found that the evidence had "more
26 than preponderated that Mr. Chavez-Zarate is a major narcotics trafficker between here and Mexico."
27 (Doc. 403 at 63, Sent. Tr. at 47:14-17.) The court was "convinced that the wiretaps in this case showed
28 major, major transactions being talked about" by Defendant and that the large quantity of "very pure

7

cocaine" involved in the Chicago seizure showed his "major, major involvement." (*Id.* at 47:20-22, 48:12-14.) "[I]n light of the continued danger to the community and the involvement that Mr. Chavez has had," the court concluded that the probation officer's recommendation of a life sentence was "the correct one." (*Id.* at 48:15-18.)

Finally, as Judge Drozd's denial order also noted, when Defendant's sentence was reduced in 2018, Judge O'Neill "applied the § 3553(a) sentencing factors and concluded that a sentence at the revised high-end of the guideline range (accounting for the Drug Minus Two amendment) was still appropriate in light of defendant's underlying criminal conduct." (Doc. 352 at 16, citing Doc. 326 at 6.)

In noting this, the Court acknowledges that Defendant is 71 years old, and his physical health is declining. He has a low risk of recidivism, a clean disciplinary record, and has displayed exceptional rehabilitation while in BOP custody. He has served approximately 323 months of his 405-month sentence to date. However, the Court agrees with the government that these factors, when coupled with the seriousness of Defendant's offense, are insufficient to justify the reduced sentence Defendant seeks. Both Judge Wanger and Judge O'Neill previously considered the nature and characteristics of Defendant's offense, along with the remaining relevant § 3553(a) factors, in determining that the sentence imposed was reasonable and sufficient, but not greater than necessary, to comply with the purposes stated at 18 U.S.C. § 3553(a)(2).

In sum, any further reduction of Defendant's sentence would not reflect the seriousness of his offense, promote respect for the law, provide just punishment, or afford adequate deterrence to criminal conduct. *See* 18 U.S.C. §§ 3553(a)(2)(A)-(B). Therefore, Defendant's motion pursuant to 18 U.S.C. § 3582(c)(1)(A) is denied.

### III.  Sentence Reductions under 18 U.S.C. § 3582(c)(2)

#### A.  Legal Standard

The limited circumstances in which a court may modify a sentence also include compassionate release "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(2). In such a case, "the court may reduce the term of imprisonment, after considering the

factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id*. The relevant policy statement applicable to § 3582(c)(2) provides:

> A reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if—
> (A) none of the amendments listed in subsection (d) is applicable to the defendant; or
> (B) an amendment listed in subsection (d) does not have the effect of lowering the defendant's applicable guideline range.

U.S.S.G. § 1B1.10(a)(2).

As such, district courts conduct a "two-step inquiry" to determine whether to grant relief under 18 U.S.C. § 3582(c)(2). *Dillon*, 560 U.S. at 826. First, the court "'determine[s] the amended guideline range that would have been applicable to the defendant' had the relevant amendment been in effect at the time of the initial sentencing." *Id.* at 827 (quoting U.S.S.G. § 1B1.10(b)(1)). If a defendant is found "eligible" under the first step, the court then considers the applicable sentencing factors enumerated in 18 U.S.C. § 3553(a) to determine whether, in its discretion, "the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." *Id*.

**B.     Eligibility under Amendment 821, Part A ("Status Points" Provision)**

Effective November 1, 2023, the Sentencing Commission amended two provisions of the Sentencing Guidelines—"parts A and B, subpart 1"—which applied retroactively. *See* U.S.S.G. § 1B1.10(d) (2023) ("Amendment 821"); *see also* U.S.S.G. § 1B1.10(e)(2). Part A reduced the number of "status points" assigned to certain defendants who committed their offense while under a criminal justice sentence, thereby lowering the impact on the defendant's criminal history.

Prior to Amendment 821, a defendant received 2 additional criminal history "status" points if he or she "committed any part of the instant offense (*i.e.*, any relevant conduct) while under any criminal justice sentence." *See* U.S.S.G. § 4A1.1(d) (prior to November 1, 2023). Under the amended provision, which now appears in § 4A1.1(e), (1) a defendant who presents 7 or more criminal history points now receives 1 status point, instead of 2; and (2) a defendant who presents 6 or fewer criminal

9

history points receives no status points. U.S.S.G. § 4A1.1(e) (2023).

The parties do not dispute that Defendant is eligible for a second retroactive sentence reduction under § 4A1.1(e). When Defendant was sentenced on March 20, 2000, he was assigned two status points. (*See* PSR ¶¶ 48-50.) Under Amendment 821, he would receive none. One criminal history point would place him in criminal history category I, rather than II, which, coupled with an offense level of 40, (*see* Doc. 326 at 5), would result in a lower Guidelines sentencing range of 292 to 365 months. *See* U.S.S.G. Ch. 5, Pt. A (2023). Notwithstanding, for the reasons discussed *supra,* the Court concludes that further reduction of Defendant's sentence is not warranted according to the applicable § 3553(a) factors. *Dillon*, 560 U.S. at 827. Accordingly, Defendant's motion under § 3582(c)(2) is also denied.

**IV.    Conclusion**

Based upon the foregoing, Defendant's motions for a sentence reduction pursuant to 18 U.S.C. §§ 3582(c)(1)(A) and (c)(2) (Docs. 362, 369, 378, 395), are **DENIED**.

IT IS SO ORDERED.

Dated:    **August 13, 2025**

*Jennifer L. Thurston*
UNITED STATES DISTRICT JUDGE